UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

STEVEN M. SHERMAN,

                       Plaintiff,

        -against-

TOWN OF CHESTER, TOWN BOARD OF THE
TOWN OF CHESTER, and PLANNING BOARD
OF THE TOWN OF CHESTER,

                       Defendants.

------------------------------------------------------------------x

                                   **OPINION
AND ORDER**

                                   12 Civ. 647 (ER)

Ramos, D.J.:

      Plaintiff Steven M. Sherman sues the Town of Chester, New York ("the Town"), the

Town Board of the Town of Chester, and the Planning Board of the Town of Chester,[1] alleging

that those entities made a series of changes to the local zoning laws and demands that have

prevented Sherman from developing his property.  Plaintiff argues that Defendants' actions

violated his rights to freedom of religion, freedom to petition, substantive due process,

procedural due process, equal protection, and his right not to have his property taken without just

compensation under the federal and New York state constitutions.  Plaintiff also makes facial

and as-applied challenges to a Town law that requires developers to pay the Town's consultants'

fees, arguing that the law violated state law and Plaintiff's due process rights.  Defendants now

move to dismiss all of Plaintiff's claims.

      Plaintiff's federal constitutional claims are unripe under *Williamson County Regional*

---

[1] This Opinion generally refers to "the Town" rather than "Defendants" because the Planning Board and the Town Board are not suable entities.  *See, e.g.*, *S.W. ex rel. J.W. v. Warren*, 528 F. Supp. 2d 282, 302–03 (S.D.N.Y. 2007). Plaintiff argues that he must include these arms of the Town because he has an Article 78 claim.  *See* Pl.'s Mem. 27. However, Plaintiff can no longer prosecute his Article 78 claim in this action because it has been removed to federal court.  *See, e.g.*, *S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 464 (S.D.N.Y. 2008) ("An Article 78 proceeding must be brought in New York State court.").  All claims against the Town Board and Planning Board are therefore dismissed.

*Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985).  Plaintiff's facial and as-applied constitutional attacks on the Town fee law fails because enough procedure was accorded to the Plaintiff.  With Plaintiff's federal constitutional claims disposed of, the only remaining claims are Plaintiff's state law claims, over which the Court declines to exercise supplemental jurisdiction.   Therefore, Defendants' motion is GRANTED in part and the case is REMANDED to state court.

## BACKGROUND

Plaintiff is a real estate developer who, for $2.7 million, purchased a 398-acre tract of land in Chester, New York, known as "MareBrook."[2]  Compl. ¶¶ 5, 39.  In March 2000, Plaintiff applied to the Planning Board for subdivision approval for a development that would include 385 units of housing as well as "an equestrian facility, baseball field, tennis courts, clubhouse, on-site restaurant and a golf course that wove through the property."  Compl. ¶¶ 9–10.  Plaintiff claims the proposed development was consistent with the Town's Master Plan and was welcomed by the Planning Board.  Compl. ¶¶ 14, 19.  Later in 2000, the Planning Board "declared itself 'lead agency'" under the New York State Environmental Quality Review Act (SEQRA) and held a scoping hearing.  Compl. ¶ 42.

While Plaintiff sees the Planning Board as initially friendly, he accuses the Town Board, "the Town's legislative and policy-making body," of entering a multiyear course of action to deliberately prevent him from "using, subdividing and developing his property."  Compl. ¶ 20.  "[O]n or about July 1, 2001," the Town Board announced a six-month moratorium on development, retroactive to May 1, 2001, that Plaintiff believes only applied to his development.

---

[2] Plaintiff does not disclose the exact date of his purchase of MareBrook.  He states that he "purchased his MareBrook property in 2001."  Compl. ¶ 353.  Defendants allege that Plaintiff had not purchased the property until after the Town's moratorium on major subdivision approvals, *see* Compl. ¶¶ 45–46, went into effect.  *See* Defs.' Mem. 5 (citing Stern Decl. Ex. C, at 227).  Because of this Opinion's holding, the actual purchase date is irrelevant.

Compl. ¶¶ 45–46.  Indeed, Plaintiff's application was submitted on May 1, 2001, and two members of the Town Board "expressed the view that the Moratorium was specifically aimed at" Plaintiff.  Compl. ¶¶ 47, 49.  In November 2002, the Town extended the moratorium.  Compl. ¶ 50.  Plaintiff filed suit in an Article 78 proceeding to stop the moratorium, Compl. ¶ 51, and the Town subsequently ended the moratorium in January 2003, Compl. ¶ 52.

In December 2001, during the moratorium, Plaintiff made "a minor subdivision application" that would allow him to sell parcels of four or fewer lots to increase his liquidity.  Compl. ¶¶ 54, 58.  Plaintiff claims that this minor subdivision would have been allowed under the moratorium, Compl. ¶ 55, but the Town denied Plaintiff the right to apply for a minor subdivision, Compl. ¶¶ 57–61.

After the moratorium was lifted, the Planning Board told Plaintiff to begin working on his Draft Environmental Impact Statement ("DEIS") under SEQRA.  Compl. ¶¶ 62–63.  While Plaintiff was working on the DEIS, the Planning Board adopted a May 2003 Master Plan, which Plaintiff claims was compatible with his existing plan and the Town's previous Master Plan. Compl. ¶¶ 64–69.

The Planning Board "'deemed complete'" Plaintiff's DEIS on October 15, 2003.  Compl. ¶ 70.  Plaintiff claims that that action triggered a sixty-two day deadline for a hearing, and, as no hearing was held, he is entitled to default judgment for preliminary approval under New York law.  Compl. ¶¶ 73–77, 81–82.  Shortly after a January 2004 hearing was cancelled for lack of a quorum, Plaintiff learned that the Town Board had enacted a new zoning ordinance in December 2003.  Compl. ¶¶ 83–84.  The Town Planner, Garling Associates ("Garling"), told Plaintiff that he could easily comply with that zoning ordinance.  Compl. ¶ 88.  Plaintiff claims that this "sweet talk"—combined with his worries that seeking a default judgment would sour the

Planning Board on giving him a final approval—induced him not to seek his default judgment at that time.  Compl. ¶¶ 91, 93–96.[3]

However, the December 2003 zoning regulations required Plaintiff to make substantial changes to his plans.  The regulations required a one-hundred-foot buffer zone from the three streams on MareBrook and created a "Planned Adult Community" ("PAC") on part of MareBrook.  Compl. ¶¶ 99–101.  The zoning regulations further required the Town Board to approve the PAC and any clustering.  Compl. ¶¶ 100, 102.

Garling, who wrote at least part of the December 2003 zoning regulations, claimed that the regulations were unclear.  Compl. ¶¶ 114–16.  Garling then helped the Town write June 2004 zoning regulations that caused even more work for Plaintiff.  Compl. ¶¶ 114, 135.  Worse still, neither Garling nor any of the Defendants told Plaintiff they were working on rewriting the regulations while Plaintiff worked to comply with the December 2003 regulations.  Compl. ¶¶ 153–56.

Under the June 2004 regulations:

- Condominiums were prohibited.  Compl. ¶ 136.
- Developers were required to provide a "concept or 'sketch' plan" for PACs that "show[ed] roadways, open spaces, housing areas, wetlands, recreation areas and other site features in a broad conceptual fashion."  Compl. ¶ 144.
- The Planning Board could make developers prepare a default plan and a plan with clustering.  Compl. ¶ 148
- The buffer for federal wetlands and streams was increased.  Compl. ¶ 152.

In May 2005, Plaintiff finally developed a plan that complied with the June 2004 changes and met additional unenumerated demands by Garling.  Compl. ¶¶ 158–59.  The Planning Board approved Plaintiff's new design, but the Town Board refused to consider his application while, at

---

[3] Plaintiff ultimately sought default approval sometime during or after 2008, but has not received a response.  *See* Compl. ¶ 346 n.11.

4

the same time, it considered another developer's application.  Compl. ¶¶ 163–65.

Then, in June 2005, the Town promulgated new zoning regulations, again without giving warning to Plaintiff.  Compl. ¶ 179.  The June 2005 regulations required Plaintiff to make additional changes to his DEIS and to throw out the alterations he had made to his plan between June 2004 and June 2005 because of "the new 'buildable lot' requirements."  Compl. ¶ 181.

In February 2006, Plaintiff completed his supplemental DEIS and revised application to comply with the June 2005 regulations and undertook additional work on his plan.  Compl. ¶¶ 182, 191.  During the intervening time, Plaintiff also dropped his PAC because the Town Board demanded that the County "like" Plaintiff's proposed road connecting the PAC to the County's road, which the County refused to do.  Compl. ¶¶ 183–89.  Plaintiff claims that the Town Board's requirement that Plaintiff obtain approval from the County was meant to distract Plaintiff while the Town created new zoning regulations.  Compl. ¶ 193.

The new zoning regulations were promulgated in February 2006, again without warning Plaintiff even though Garling continued to work with Plaintiff and advise on the new regulations.  Compl. ¶¶ 193–94.  The February 2006 regulations required Plaintiff to revise his plan yet again because they "changed the buildable box of land without restrictions, from 25 feet deep to a minimum of 40 feet deep."  Compl. ¶ 196.

In March 2007, Plaintiff submitted a DEIS and plans, only to find that the Town again issued new zoning regulations without warning him.  Compl. ¶¶ 199–201.  The March 2007 regulations "eliminated . . . bonus density" and "any reasonable application for clustering."  Compl. ¶ 203.  Following meetings with Town consultants, in "mid-2007," Plaintiff terminated his attempt to get approval, believing that his attempts were futile.  Compl. ¶¶ 204–12.

Because of his belief that the Town was wasting his time and money, Plaintiff initiated

suit against the Town and other defendants on May 5, 2008.  Compl. ¶¶ 217–18; *see also* Docket,

*Sherman v. Town of Chester*, 08 Civ. 4248 (S.D.N.Y.).  At approximately the same time,

Plaintiff partnered with a business entity, whose representative, by appearance, "obviously was

an observant, Orthodox Jew."  Compl. ¶¶ 221–22.  Together they resubmitted an application for

MareBrook in November 2008 and December 2008 to a hostile Town.  Compl. ¶¶ 224–25.  The

Town Engineer responded with a "list of corrections" to the supplemental DEIS, "demand[ed]

final designs of the water and sewer plants," and "required analysis of projects located at the

other end of the Town."  Compl. ¶¶ 227–30.  In the spring of 2009, the Engineer also demanded

that Plaintiff combine his DEIS and supplemental DEIS.  Compl. ¶ 236.

The Town Engineer was replaced on May 1, 2009.  Compl. ¶ 237.[4]  Plaintiff had to incur

costs and delays as the new Engineer was brought up to speed on MareBrook.  Compl. ¶¶ 238,

240–45.

The Town zoning law was changed yet again in August 2009 to eliminate "the density

bonus for clustering," but Plaintiff claims he "appears to be grandfathered" and therefore may

not have to worry about this change.  Compl. ¶¶ 246–47.

In September 2009, Plaintiff submitted two versions of his plan to the Planning Board.

Compl. ¶ 248.  For months, without apparent reason, Plaintiff was unable to obtain a hearing

before the Planning Board.  *See* Compl. ¶¶ 249–50, 256.  Around this time, Plaintiff also

discovered that the Town had placed individuals opposed to his plans on the Planning Board.

Compl. ¶¶ 253–55.  Eventually, in December 2009, Plaintiff was told that he would be unable to

obtain a hearing until he paid $25,000 in consultants' fees to the Town.  Compl. ¶ 256.  Town

law forbade the Planning Board from holding a hearing while the fees were outstanding.  Compl.

---

[4] The new Engineer backed down from the demand for the final designs of water and sewer plants in 2011 or April 2010.  Compl. ¶¶ 233, 235, 263.

¶ 259.  Plaintiff opposed paying the fees and, when he requested invoices as allowed under the law, they were not provided a timely manner.  Compl. ¶¶ 257–58.  Plaintiff ultimately paid them in order to obtain his hearing, Compl. ¶ 261.  Later, Plaintiff "was barred" from talking to the Planning Board about the fees.  Compl. ¶ 262.

Plaintiff notes other obstacles in 2010.  In May 2010, the Town told Plaintiff not to submit anything in writing.  Compl. ¶ 270.  When Plaintiff submitted a revised DEIS in June 2010, the Chairman of the Planning Board "demanded an additional cluster plan."  Compl. ¶ 271.  In September 2010, the Planning Board considered Plaintiff's plan complete and scheduled a hearing.  Compl. ¶ 272.  But, in December 2010, the Town replaced the Town Planner and the new Planner required expensive studies and told Plaintiff the road sizes would have to be changed.  Compl. ¶¶ 273–75, 277–78.

In July 2011, the Planning Board canceled Plaintiff's appearance before the Board because the Town claimed that Plaintiff owed an additional $40,000 in consultants' fees.  Compl. ¶ 276.  The Town also required that Plaintiff respond to a lengthy questionnaire.  Compl. ¶¶ 294–95.

On November 10, 2011, Plaintiff commenced an Article 78 proceeding in Orange County because the Town required that he pay its consulting fees before he could challenge the Town's determinations administratively and appear before the Planning Board.  Compl. ¶¶ 286–87, 350.[5]

On January 12, 2012, Plaintiff instituted this action in the Supreme Court of Orange County, New York.  *See* Notice of Removal ¶¶ 1, 4, ECF No. 1; Compl. 85.  On January 25, 2012, Defendants removed Plaintiff's action to federal court.  *See* Notice of Removal.

Plaintiff claims multiple intentions behind Defendants' actions:  they wanted to make

---

[5] Seemingly, Plaintiff's assertion about an administrative challenge refers to his right to an appeal under Town Law § 48-5.

MareBrook a "*de facto* nature preserve," Compl. ¶¶ 21, 30, 285, 299; to retaliate against Plaintiff for instituting several lawsuits against the Town over the development of MareBrook, Compl. ¶¶ 26–29, 61, 225, 231, 241, 262; and to discriminate against Plaintiff because Plaintiff is Jewish, one of his business associates is Jewish, and Town residents are worried about Plaintiff creating a Hasidic community, Compl. ¶¶ 31–32, 222, 225, 307–24, 326.

At the end of the day, Plaintiff still has not developed his property, has not derived any monetary gain from it, and, more importantly, has not received a final decision on his plans. Compl. ¶¶ 298, 302, 303–06.  Plaintiff argues that Defendant's obstruction shows that a "[s]ecret 'final decision'" was made to block him from developing his property.  Compl. 56.  In addition to the $2.7 million purchase price, Plaintiff claims he has spent $2 million seeking approval from the Town to develop his property, Compl. ¶ 354, or roughly $5.5 million in cumulative taxes, cumulative interest charges, carrying costs, and yearly expenses, Compl. ¶ 367.

## **STANDARD OF REVIEW**

### ***Motion to Dismiss***

On a motion to dismiss pursuant to Rule 12(b)(6), the Court is required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).  To survive a Rule 12(b)(6) motion, a plaintiff must generally plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has

acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555).  Moreover, when reviewing the complaint, the Court "'giv[es] no effect to legal conclusions couched as factual allegations.'"  *Starr v. Sony BMG Music Entm't,* 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, (2d Cir. 2007)).

## DISCUSSION

Plaintiff challenges Defendants' actions as violations of his federal constitutional rights to freedom of religion, freedom to petition, substantive due process, procedural due process, equal protection, and his right not to have his property taken without just compensation.  These claims are not yet ripe.  Plaintiff also makes as-applied and facial challenges to a Town law requiring developers to pay the Town's consultants' fees, arguing that it was a violation of the due process clause and violated state law.  Plaintiff's facial challenge and as-applied federal constitutional challenges fail as a matter of law.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law and state constitutional challenges to the zoning process or the Town fee law.

### 1. *Plaintiff's Federal Due Process, Equal Protection, and Takings Claims Are Unripe Under* **Williamson**

### A.  **Plaintiff's Claims Do Not Pass the** *Williamson* **Ripeness Test**

"Under Article III of the Constitution, a case or controversy must be ripe for adjudication in order to prevent judicial entanglement 'in abstract disagreements over administrative policies,' and to avoid interference with an administrative decision before it 'has been formalized and its effects felt in a concrete way by the challenging parties.'"  *Kowalczyk v. Barbarite*, No. 08 Civ. 6992, 2012 WL 4490733, at *7 (S.D.N.Y. Sept. 25, 2012) (quoting *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807–08 (2003)).  The Supreme Court developed a two-

prong ripeness test for regulatory takings in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), that the Second Circuit routinely applies to all of the federal constitutional claims brought by Plaintiff, except his First Amendment claim, which will be discussed in the next Section.[6]  *See, e.g.*, *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88–89 (2d Cir. 2002) (explaining that the *Williamson* test applies to takings, equal protection, substantive due process, and procedural due process claims); *see also id.* at 89–91 (holding that the *Williamson* test did not apply to the plaintiff because his First Amendment claim did not "raise a question of administrative finality," but was instead "based upon an immediate injury").

Under the two-prong *Williamson* test, a property owner is first "required to obtain a final, definitive position as to how it could use the property from the entity charged with implementing the zoning regulations. . . [by] submitting at least one meaningful application for a variance." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005).  Second, "a property owner must seek compensation for an alleged taking before proceeding to federal court." *Murphy*, 402 F.3d at 349.  When the *Williamson* test is applied to claims other than takings claims, plaintiffs must only pass the first prong.  *See id.* at 350 ("Following the view of these other circuits, we have applied prong-one ripeness to land use disputes implicating more than

---

[6] The *Williamson* test applies to Plaintiff's 42 U.S.C. § 1981 claim because it "has the same pleading standards as the Equal Protection Clause."  *Brisbane v. Milano*, 443 F. App'x 593, 594 (2d Cir. 2011) (summary order) (citing *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000)).  In the alternative, Plaintiff did not plead any facts that plausibly show intentional racial discrimination.  Although Jews are considered members of a protected race under § 1981, *see Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1987) (holding that Jews were a separate race under § 1982 and, in dicta, stating the same for contemporaneous legislation), virtually all Plaintiff has pled is that he and a business partner who arrived late to the scene are Jewish, *see* Compl. ¶¶ 32, 309–10, 312, 314–15.  Wholly conclusory allegations will not support a § 1981 claim.  *See Zavalidroga v. Cote*, 395 F. App'x 737, 740 (2d Cir. 2010) (summary order) (citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087–88 (2d Cir. 1993) (per curiam)).

Plaintiff's request to add a 42 U.S.C. § 1982 claim is denied as futile for the same reasons his Section 1981 claim is dismissed.  *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 447 (2008) ("[O]ur precedents have long construed §§ 1981 and 1982 similarly.").

10

just Fifth Amendment takings claims.").

Plaintiff's claim fails *Williamson*'s first prong because, as Plaintiff concedes, Defendants have made no final decision on his project.  *See, e.g.*, Compl. ¶ 303 ("By constantly changing the subdivision approval criteria, Defendant Town avoided the issuance of any 'final decision' on Plaintiffs MareBrook Project applications, thereby denying Plaintiff the ability to appeal to the Town's Zoning Board of Appeals or to State courts through a CPLR Article 78 proceeding or declaratory action about the Planning Board's disapproval.").

### B.  Plaintiff Does Not Qualify for the Futility Exception

Plaintiff argues that Defendants' unwillingness to approve his project is a "*de facto* final decision," *see* Pl.'s Mem. 13–16, and that continuing to fight for a final decision would be futile, *see* Pl.'s Mem. 16–17.  Both of these arguments are evaluated under the futility exception to the *Williamson* test.  Under the futility exception, "[a] property owner . . . will be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile" because, for instance, "a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." *Murphy*, 402 F.3d at 349.

"While the Second Circuit has not yet determined what the precise contours of the futility exception are, the consensus among courts appears to be that to invoke the futility exception, a plaintiff must demonstrate: (1) that plaintiff has filed at least one meaningful application, and (2) the inevitability of refusal of the application, taking into consideration factors such as the defendants' hostility, delay and obstruction."  *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, No. 07 Civ. 6304, 2013 WL 66473, at *19 (S.D.N.Y. Jan. 4, 2013) (quoting *Homefront Org., Inc. v. Motz*, 570 F. Supp. 2d 398, 407 (E.D.N.Y. 2008), and *Osborne v.*

11

*Fernandez,* No. 06 Civ. 4127, 2009 WL 884697, at *5 (S.D.N.Y. Mar. 31, 2009), *aff'd*, 414 F.

App'x 350 (2d Cir. 2011) (summary order)) (internal quotation marks, brackets, and citations

omitted).

Although the futility exception is supported by strong Supreme Court dicta, *see Palazzolo*

*v. Rhode Island*, 533 U.S. 606, 621 (2001) ("Government authorities, of course, may not burden

property by imposition of repetitive or unfair land-use procedures in order to avoid a final

decision."); *see also Murphy*, 402 F.3d at 349 (citing *Lucas v. S.C. Coastal Council*, 505 U.S.

1003, 1012 n.3 (1992), for the proposition that "an application for a variance is not required

when it would be 'pointless'"), "[c]ourts have interpreted this futility exception narrowly."

*Missere v. Gross*, 826 F. Supp. 2d 542, 555 (S.D.N.Y. 2011).

Moreover, a Plaintiff must show that "any application by the Plaintiff[] would be

denied." *Kowalczyk*, 2012 WL 4490733, at *7. After all, the Supreme Court has observed that

"the final decision requirement is not satisfied when a developer submits, and a land-use

authority denies, a grandiose development proposal, leaving open the possibility that lesser uses

of the property might be permitted." *Palazzolo*, 533 U.S. at 619. Therefore, if it appears that a

lesser use could survive, further applications are not futile.

Under courts' narrow interpretation of the futility exception, there are essentially three

categories of viable cases. First, there are cases in which it is clear that the relevant zoning board

has no discretion and therefore a variance request is genuinely futile. *See Murphy*, 402 F.3d at

349 (citing cases). Second, there are cases in which a plaintiff can point to behavior, like a

statement vowing never to let development occur, that shows that the project has actually been

denied. *See Donovan Realty, LLC v. Davis*, No. 07 Civ. 905, 2009 WL 1473479, at *2, 4

(N.D.N.Y. May 27, 2009) (applying the futility exception when the defendant said that "that

under no circumstances would the Planning Board ever consider granting the Plaintiffs' request for a site plan amendment at their New Baltimore property"); *W. 95 Hous. Corp. v. N.Y.C. Dep't of Hous. Pres. & Dev.*, No. 01 Civ. 1345, 2001 WL 664628, at *5 (S.D.N.Y. June 12, 2001) (finding futility when defendant said it "cannot issue the letter of no objection" that was necessary), *aff'd*, 31 F. App'x 19 (2d Cir. 2002) (summary order); *see also S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 463–64 (S.D.N.Y. 2008) ("The futility exception was created to 'protect property owners from being required to submit multiple applications when the manner in which the first application was rejected makes it clear that no project will be approved.'" (quoting *Kittay v. Giuliani*, 112 F. Supp. 2d 342, 349–50 (S.D.N.Y. 2000), *aff'd*, 252 F.3d 645 (2d Cir. 2001) (per curiam)). These statements must be very strong. One court rejected plaintiffs' claim for futility when defendant made "statements that no project of the plaintiffs was 'happening in our town,' 'we are not like *you people* from Westhampton,' and for plaintiffs to 'move on.'" *Homefront Org.*, 570 F. Supp. 2d at 408.

        Plaintiff, however, is in a third category, where he asserts that the Town's delay and obstruction create inferential proof that the Town has "dug in its heels." Although, as stated above, courts should scrutinize the defendants' hostility, delay and obstruction, courts have held that no amount of delay or hostility alone is enough to trigger the futility exception. *See Missere*, 826 F. Supp. 2d at 555 ("[A two-year] delay is not significant enough (and delay by itself may not be sufficient at all) to establish that [a town] has 'dug in its heels' on any further applications from [a plaintiff].");  *Homefront Org.*, 570 F. Supp. 2d at 408  ("[C]ourts in this Circuit have recognized that 'mere allegations of open hostility [are] not sufficient to invoke the futility exception.'" (quoting *Goldfine v. Kelly*, 80 F. Supp. 2d 153, 160–61 (S.D.N.Y. 2000))); *S&R Dev. Estates, LLC*, 588 F. Supp. 2d at 463 ("Futility does not exist merely because of hostility to

the developer's plans." (citing *Goldfine*, 80 F. Supp. 2d at 160–61, and *Tri-State Video Corp. v. Town of Stephentown*, No. 97 Civ. 965, 1998 WL 72331, at \*4 (N.D.N.Y. Feb. 13, 1998))).

Perhaps because of the high standard for inferential futility, Plaintiff did not point to any case in which the Court applied the futility exception because of such inferential proof.  There are a few.  The closest to Plaintiff's situation is *Sunrise Development, Inc. v. Town of Huntington, N.Y.*, 62 F. Supp. 2d 762 (E.D.N.Y. 1999).  In *Sunrise*, the defendant-town instituted a new zoning change when the developer's plan was complete.  Although the new zoning law was very difficult for the developer to comply with, it grandfathered all other developers, *see id.* at 768–69 (quoting report and recommendation), as Plaintiff claims the Town did here.  However, in *Sunrise*, the zoning regulation was especially pernicious because it blocked the developer from obtaining a special use permit as of right, which it would have been able obtain under the old law.  *Id.* at 766 (explaining that granting the special permit is non-discretionary); *id.* at 767–68 (explaining that even defendants agreed that the developer's application met the necessary criteria and was final).  That certainty made the *Sunrise* plaintiffs' injuries concrete and meant that no more administrative process was necessary to determine the extent of the harm.  *See id.* at 771 ("[T]he Board has taken final, definitive action that prevents the issuance of a special use permit to Sunrise."); *cf. also Honess 52 Corp. v. Town of Fishkill*, 1 F. Supp. 2d 294, 300–01 (S.D.N.Y. 1998) (finding plaintiff's claims were ripe under the futility exception where plaintiff was entitled to approval under a 1977 stipulation but the defendant-town appeared to be blocking approval until the stipulation expired).  Here, Plaintiff claims that he passed up his opportunity to receive *preliminary* approval as of right, but recently sought that approval.  *See* Compl. ¶¶ 76–77, 95–96.  However, while the Town's zoning changes have burdened Plaintiff, they have not resulted in a definitive rejection of his plans.  More

14

administrative process is needed for the claim to become ripe.

Another way of describing the futility exception is that "'the ripeness doctrine does not require litigants to engage in futile gestures such as to jump through a series of hoops, the last of which is certain to [be] obstructed by a brick wall, the presence of that brick wall must be all but certain for the futility exception to apply.'" *Kowalczyk*, 2012 WL 4490733, at *9 (quoting *County View Estates @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 150 (E.D.N.Y. 2006) (quoting report and recommendation). Here, all that is known is that Plaintiff has jumped through many hoops—more, perhaps, than sound policy should require—and there are one or more hoops in the future. The inference that there is a brick wall at the end is hard to establish, and it is not established here, though it is a close case.

A futility exception with such limited application seems unduly harsh. However, the Second Circuit recently suggested that developers in Plaintiff's position seek relief through Article 78 mandamus: "To the extent [a plaintiff] argues that a failure to rule on his application—complete or incomplete—denied him [or her] procedural due process, the claim fails . . . because [the plaintiff] was free to bring an Article 78 mandamus proceeding in New York State court." *Nenninger v. Vill. of Port Jefferson*, No. 11-2743-cv, 2013 WL 323004, at *2 n.2 (2d Cir. Jan. 29, 2013) (summary order).

For the reasons stated above, Plaintiff's takings, equal protection, and due process claims are unripe.

### 2. *Plaintiff's First Amendment Claim Is Also Unripe*

Whether Plaintiff's First Amendment claim is also a victim of the *Williamson* ripeness test is a more complicated question. Here, the Court need only consider whether Plaintiff's right to petition retaliation claim is subject to the first prong of the *Williamson* ripeness test because Plaintiff's other First Amendment claims clearly fail.

15

Plaintiff's freedom of religion claim is frivolous.  Plaintiff did not—and cannot—describe a "central religious belief" that was substantially burdened by the town.  *See Skoros v. City of N.Y.*, 437 F.3d 1, 39 (2d Cir. 2006) (quoting *Jimmy Swaggart Ministries v. Bd. of Equalization*, 493 U.S. 378, 384–85 (1990)).  Plaintiff's right to association claim is also frivolous as his asserted right is the right "to associate with people who are Orthodox or Hasidic Jews" as business partners, "and to potentially sell land or housing to such individuals."  Compl. ¶ 373.  This falls under neither the rubric of freedom of expressive association—because Plaintiff pled no facts that show he planned to associate with Orthodox or Hasidic Jews for "activit[y] protected by the First Amendment, such as speech, assembly, the exercise of religion, or petitioning for the redress of grievances," *Sanitation & Recycling Indus., Inc. v. City of N.Y.*, 107 F.3d 985, 996 (2d Cir. 1997)—nor the freedom of intimate association—because his purported association is entirely unlike "those that attend the creation and sustenance of a family," *Piscottano v. Murphy*, 511 F.3d 247, 278 (2d Cir. 2007) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619 (1984)) (internal quotation mark omitted), which exemplify the right to expressive association.  Finally, Plaintiff's right to petition claim is entirely coextensive with his unripe procedural due process claim.  *See* Compl. ¶ 376.

The Second Circuit has stated that "in certain circumstances a First Amendment claim emanating from a land use dispute may be subject to the *Williamson County* prong-one ripeness test."  *Murphy*, 402 F.3d at 350.  To determine whether the *Williamson* ripeness test applies, a court must ask "(1) whether the [Plaintiff] experienced an immediate injury as a result of [Defendants'] actions and (2) whether requiring the [Plaintiff] to pursue additional administrative remedies would further define [his] alleged injuries."  *Id.* at 351.

In some respects, Plaintiff's case resembles *Dougherty v. Town of North Hempstead*

*Board of Zoning Appeals*, 282 F.3d 83 (2d Cir. 2002), in which a right-to-petition retaliation

claim was claim was held not to be subject to the *Williamson* ripeness test.  *Id.* at 91.  In

*Dougherty*, the plaintiff alleged that the defendant-town had rescinded a building permit four

days after the plaintiff opposed the town's motion to dismiss plaintiff's lawsuit and after plaintiff

had completed substantial work on the building.  *Id.* at 87.  As with the analogy to *Sunrise* above,

Plaintiff's case is distinct from the example in *Dougherty* because his injury is less complete.  In

*Dougherty*, the plaintiff's complete and distinct injury was that the town revoked his license after

he spent money building on the land.  *See id.* at 90 ("Dougherty suffered an injury at the moment

the defendants revoked his permit, and Dougherty's pursuit of a further administrative decision

would do nothing to further define his injury.").  Here, all of Plaintiff's alleged injuries are the

same as the actions that allegedly have caused an uncompensated taking, a violation of due

process, and of equal protection.[7]  Plaintiff claims his lawsuit in 2002 to end the moratorium

caused Defendants to make all of their zoning changes.  Similarly, Plaintiff claims his 2008

lawsuit caused Defendants to follow a rigid, letter-of-the-law policy that further delayed his

subdivision application.  Because Plaintiff's alleged retaliation injuries are that Defendants have

prevented him from developing the property, a final decision on the property and an application

for a zoning variance are additional administrative remedies that would further define his injury.

     Moreover, because a zoning variance functions somewhat like an appeal or collateral

attack, it would allow Plaintiff to "the opportunity to challenge and develop a record on the

standards (or lack thereof) underlying" Defendants' actions during this process.  *Murphy*, 402

---

[7] Plaintiff's injury is further dissimilar from that in *Dougherty* because there is no real change in Defendants' behavior from which to infer a causal inference.  "[N]othing in the record indicates that the [Plaintiff's] grievances 'prompted or substantially caused' the Town to commit any of the acts alleged in the complaint.'"  *Ferran v. Town of Nassau*, 471 F.3d 363, 370 (2d Cir. 2006) (per curiam).  Under Plaintiff's facts, Defendants consistently took actions that made the development of MareBrook more difficult.  Plaintiff's lawsuits were never chronologically close to any heightening of Defendants' alleged obstruction.

F.3d at 352.

It would not make sense to hold that Plaintiff's right-to-petition retaliation claim is ripe while his other constitutional claims are not because they are based on the same facts, especially because so holding would create perverse incentives.  Every developer who believes he or she has a controversial project would be incentivized to sue at the beginning of the process so that he or she could claim that any unripe takings, equal protection, or due process claim was actually a ripe right-to-petition retaliation claim.

To be sure, right-to-petition retaliation claims do not have to move in lockstep with the other claims subject to the *Williamson* ripeness test.  *Murphy* clearly states if the injury created by retaliation is immediate and does not require additional process to determine its scope, then it is justiciable while the other claims remain unripe.  Here, however, the retaliation claim requires as much administrative process as his other claims.  Accordingly, Plaintiff is unable to establish that his First Amendment claim is ripe.

### 3. *Plaintiff's Facial and As-Applied Due Process Challenges to the Town's Fee Law Fails Because the Law Provides and Plaintiff Was Accorded Sufficient Process*

Plaintiff attacks the Town fee law for being "utterly open-ended" in contravention of New York law, Pl.'s Mem. 47–48; *see also* Compl. ¶ 468,[8] violating New York State's SEQRA regulations, *id.*; Compl. ¶ 465, and providing insufficient due process, Pl.'s Mem. 49; *see also* Compl. ¶ 475.  Plaintiff does not plausibly plead an equal protection or takings claim.  Because the other remaining claims are state law claims, Plaintiff's facial and as-applied federal due process claims are addressed first.  Because the law provides sufficient pre- and postdeprivation hearings and because sufficient hearings were actually available to Plaintiff, there is no due process violation.

---

[8] To the extent that this is a facial federal due process challenge, Plaintiff's assertion fails because the law limits the fees to those that are "reasonable and necessary."  Town Code § 48-3(A).

### A.  Plaintiff's Facial Challenge Fails Because the Law Provides Adequate Pre- and Postdeprivation Hearings

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also Dickerson v. Napolitano*, 604 F.3d 732, 741 (2d Cir. 2010) ("Facial challenges are generally disfavored." (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008))).  Here, as the Town fee law is written, it clearly accords Plaintiff sufficient due process.  "A two-prong test applies to analyze procedural due process claims.  First, the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution.  Second, if a protected interest is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process."  *Howard v. Town of Bethel*, 481 F. Supp. 2d 295, 305 (S.D.N.Y. 2007) (quoting *Henderson v. N.Y.*, 423 F. Supp. 2d 129, 145 (S.D.N.Y. 2006) (internal quotation marks omitted)).  Here, because the government provided due process, it is assumed that Plaintiff has a protected property interest.  *See id.* (assuming that plaintiffs had a protected property interest).

To determine what process is due, the Court turns to the venerable *Mathews* balancing test.  Under the *Mathews* test, three factors are weighed:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Bailey v. Pataki*, No. 10–2563, 2013 WL 535744, at *9 (2d Cir. Feb. 14, 2013) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)) (internal quotation marks omitted).  Here,

Plaintiff has a substantial interest in protecting himself from unnecessary delays in his attempt to get approval. The risk of deprivation under the current law, as discussed below, is relatively low because of the pre- and postdeprivation hearings provided by the law. Finally, it would be very burdensome to require towns to hold hearings before a neutral arbitrator before "demanding payment of a disputed fee," as Plaintiff argues is necessary. Compl. ¶¶ 483–84.

The sufficiency of the Town fee law's process can be seen by extended analogy to cases in which public employees contested their termination. "In general, 'the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property.'" *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 115 (2d Cir. 2006) (quoting *Zinermon*, 494 U.S. at 127). However, that hearing only needs to be minimal and may be conducted by writing. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545–46 (1985) ("[T]he pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges . . . are true and support the proposed action."); *id.* at 546 ("The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."); *Locurto v. Safir*, 264 F.3d 154, 173 (2d Cir. 2001) ("Although due process guarantees notice and a hearing prior to the termination of a tenured public employee, the requisite hearing is a minimal one."). Additionally, in the employment context, the employee is not entitled to have his or her predeprivation hearing before an impartial adjudicator. *See Locurto*, 264 F.3d at 174 ("We fully agree with the view that the costs to the state of additional pre-deprivation guarantees (in this case, a neutral adjudicator) outweigh possible benefits to the employee, given the availability of a full post-deprivation hearing.").

In this case, the Town fee law offers a minimal predeprivation hearing that would be satisfactory for firing an employee.  Under Town Code § 48-3(L), copies of the invoices are sent to land use applicants and the applicants are provided fifteen days to object to payment in writing.  Section 48-5 of the Town Code similarly provides applicants a right to appeal.  Further, Plaintiff's claim that an impartial adjudicator is necessary for a predeprivation hearing does not pass the *Mathews* test here as it did not in employment cases.  Ruling for Plaintiff here would require all municipalities to have neutral administrators review every billing dispute before demanding payment.  This cost far exceeds the risk and scope of erroneous deprivation.

Similarly, Plaintiff is able to obtain postdeprivation process that would be sufficient for employment cases—in this case, under Article 78, as he is currently attempting to do.  In employment cases, if a plaintiff is able to obtain a hearing in an Article 78 proceeding, that satisfies the due process requirements for a "full adversarial hearing before a neutral adjudicator" postdeprivation.  *Locurto*, 264 at 174–75.  This is a sufficient postdeprivation remedy outside the employment context as well.  *See, e.g.*, *Henderson*, 423 F. Supp. 2d at 145–46 ("Indeed, plaintiff did file an Article 78 proceeding in state court. . . .  The Second Circuit has held that an Article 78 proceeding provides a meaningful remedy where violations of due process are alleged." (citing *Vargas v. City of N.Y.*, 377 F. 200, 205 (2d Cir. 2004)).  In this case, Plaintiff is in the middle of pursuing precisely that postdeprivation remedy.  *See* Compl. ¶¶ 286–90, 350.  Although, as Plaintiff argues, Article 78 proceedings cannot be used to obtain a declaratory judgment that a legislative act is unconstitutional, *see N.Y.C. Health & Hosps. Corp. v. McBarnette*, 639 N.E.2d 740, 743–45 (N.Y. 1994), this Opinion answers Plaintiff's federal constitutional claims and Plaintiff could initiate a "combined CPLR article 78 proceeding and an action for declaratory and injunctive relief," *N.Y. Charter Schools Ass'n, Inc. v. DiNapoli*, 914

N.E.2d 991, 996 (N.Y. 2009), or a New York court may convert an Article 78 petition into a declaratory judgment action where appropriate, *see, e.g.*, *Oglesby v. McKinney*, 858 N.E.2d 1136, 1138–39 (N.Y. 2006).

Because the Town fee law provides sufficient pre- and postdeprivation hearings, Plaintiff's facial due process challenge must be dismissed.

### B.  Plaintiff's As-Applied Challenge Fails Because Enough Process Was Actually Available to Him

The above analysis does not resolve Plaintiff's as-applied, federal claim.  Although Plaintiff did not argue that he did not actually receive sufficient due process in his memorandum of law, Pl.'s Mem. 47–49, he did so in his Complaint, *see* Compl. ¶ 473 ("On its face, and as applied, the Defendant's consultant fee regulation is invalid as a violation of due process, equal protection, and as a governmental taking of property without just compensation.").[9]  After all, regardless how much process Plaintiff was supposed to receive under the Town fee law, he may not actually have received it.

Here, accepting as true all factual allegations in the Complaint and drawing all reasonable inferences in Plaintiff's favor, *see Famous Horse Inc.*, 624 F.3d at 108, Plaintiff's as-applied due process case is as follows.  At least one time, Plaintiff was not given the predeprivation hearing that the Town fee law provided he would receive.  *See* Compl. ¶¶ 257–258 (claiming that the Town refused to give invoices to Plaintiff within the 15 days that the Plaintiff had to contest the reasonableness of the fees).  More broadly, Plaintiff also claims that he has not been given an opportunity to have a hearing of any kind regarding the excessiveness and unreasonableness of the fees, probably because he believes an impartial hearing and initial appeal are necessary.  *See*

---

[9] Again, no facts in Plaintiff's complaint plausibly show that the Town's fee law is a violation of equal protection or an uncompensated taking.  Neither his complaint nor his memorandum of law in response to the motion to dismiss make out a legal case for those claims either.

Compl. ¶¶ 480, 483–84.

However, Plaintiff paid those fees, and did not plead that he did so under protest. *Compare* Compl. ¶ 261, *and* Compl. ¶ 288 ("In addition, from December 2009 through October 2011, Plaintiff paid approximately $89,000 to the Town, as demanded, for its unreasonable consultant fees."), *with Twin Lakes Dev. Corp. v. Town of Monroe*, 801 N.E.2d 821, 827 (N.Y. 2003) ("Here, plaintiff apparently paid the fees 'under protest' but the record contains no indication of the nature of that protest and plaintiff did not request an audit of the fees."). Moreover, Plaintiff has not shown that the lateness of the invoicing prejudiced him in his appeal about the reasonableness of the fees.

As described above, the Town fee law's provision allowing for a plaintiff to receive records and contest the reasonableness of the fees within fifteen days allows the law to survive Plaintiff's facial due process challenge. In this case, the Town did not comply with its own law. However, the New York Court of Appeals has held that when a town does not follow its own procedural rules for a predeprivation hearing regarding consultants' fees, a claim for violation of procedural due process will not lie when the developer could have audited the fees according to New York Town Law §§ 118–19 and the Town's code "expressly limits the fees that can be exacted to those that are 'reasonable.'" *Twin Lakes Dev. Corp.*, 801 N.E.2d at 827; *cf. also Howard*, 481 F. Supp. 2d at 305–06 (explaining that the defendant-town's failure to confer with the plaintiff-applicants about consulting fees per the town's regulations did not violate procedural due process where the "plaintiffs had the opportunity to audit the fees and verbally address them with the Planning Board"). In its 2008 litigation against Sherman, the Town conceded that the same state audit laws apply to its application of consultants' fees: "Town Law §§ 118 & 119 provide a procedural mechanism for a party to request an audit of fees charged and

a timely 'CPLR article 78 in the nature of mandamus is proper' to effectuate that mechanism." Defs.' Mem. Law 18, 08 Civ. 4248 (S.D.N.Y.), ECF No. 33 (quoting *Wildlife Assocs. v. Town Bd. of Town of Southampton*, 529 N.Y.S.2d 548, 549 (App. Div. 1988) (mem.)).  Further, Plaintiff is protected in part because the Town "audits vouchers submitted by consultants in the first instance."  *Twin Lakes Dev. Corp.*, 801 N.E.2d at 827; *see also* Town Code § 48-3(M).

Therefore, the as-applied, federal procedural due process challenge must be dismissed.

### 4. *The Court Declines To Exercise Supplemental Jurisdiction over the Remaining State Claims*

"As the only remaining claims before this Court are [Plaintiff's] New York state law claims, the Court declines to exercise supplemental jurisdiction over them."  *Kowalczyk*, 2012 WL 4490733, at *11 (citing 28 U.S.C. § 1367(c)(3)); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal law claims have dropped out of the lawsuit in its early stages and only state law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice . . . .").  Because the case was brought before this Court by removal and the Court no longer has subject-matter jurisdiction, the case is remanded to state court.  *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *see also Cont'l Cablevision of Mich. v. Edward Rose Realty, Inc.*, 840 F.2d 16, at *3 (6th Cir. 1988) (unpublished table opinion) (per curiam).

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED** in part as to all of Plaintiff's federal claims.  The case is **REMANDED** to the Supreme Court of the State of New York, Orange County.  The Clerk of the Court is respectfully requested to terminate the motion, Doc. 6.

SO ORDERED.

Dated: March 20, 2013
       White Plains, NY

EDGARDO RAMOS, U.S.D.J.